USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/6/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIKA M. HERNANDEZ AND ERLIN DONALDO CHOJ XOL,

                     Plaintiffs,

-against-

HACIENDA MEXICANA CORP. D/B/A HACIENDA RESTAURANT, JESUS CISNEROS, AND JUAN CISNEROS,
                     Defendants.

17-CV-5608 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Erika M. Hernandez ("Hernandez"), a cook's helper, worked alongside Erlin Donaldo Choj Xol ("Xol"), a cook, at Hacienda Restaurant. Hernandez and Xol (collectively "Plaintiffs") commenced this action against Hacienda Mexicana Corp. d/b/a Hacienda Restaurant, ("Hacienda"), Jesus Cisneros, and Juan Cisneros (collectively, "Defendants") on July 24, 2017. (*See* ECF No. 1 ("Complaint")). Plaintiffs bring claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York Labor Law, 12 N.Y.C.R.R. §§ 135-146, *et seq.* ("NYLL"). Presently before the Court are both parties' pre-trial motions *in limine*.

Defendants seek to preclude Plaintiffs from offering any evidence concerning a prior wage and hour lawsuit in California that also involved Defendant Juan Cisneros, which occurred in or about 2010. Plaintiffs have submitted a motion requesting that the Court instruct the jury that an adverse inference may be drawn regarding contents of missing time sheets, allegedly kept by Defendants, which showed the dates and hours worked by Plaintiffs.

For the following reasons, the Defendants' motion is GRANTED and Plaintiffs' motion is GRANTED in part and DENIED in part.

1

## BACKGROUND

The following allegations are taken from Plaintiffs' Complaint. Plaintiffs allege that between June 2016 and January 2017, they worked more than 70 hours per week. (Compl. ¶ 1.) During this time, they were not paid either the minimum wage or overtime pay for their work. (*Id.*) Instead, they were paid hourly wages as low as $6.06 per hour and never received time and a half for the hours they worked above 40 in a workweek. (*Id.*) They also allege that they were never paid for their final three days of work. (*Id.*) Consequently, they seek, *inter alia*, their unpaid wages, liquidated damages, and damages for other violations of NYLL, such as failure to pay additional compensation for Plaintiffs' spread of hours and failure to provide notices containing Plaintiffs' rates of pay. (*Id.* ¶ 2.)

Each party has submitted a motion *in limine* in anticipation of trial. Defendants' motion seeks to preclude all evidence related to a prior wage and hour litigation in California involving Juan Cisneros that occurred in or about 2010. (*See* Memorandum in Support of Defendants' Motion *in Limine*, ("Def. Mem."), ECF No. 30.). Plaintiffs' motion requests the Court to instruct the jury that an adverse inference may be drawn as to the contents of certain missing time sheets allegedly kept by Defendants, which show the dates and hours worked by Plaintiffs. (*See* Memorandum in Support of Plaintiffs' Motion *in Limine*, ("Pl. Mem."), ECF No. 34.).

The Court addresses each party's motion in turn.

## DISCUSSION

### I. Legal Standard

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 176–77 (S.D.N.Y.2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial

on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139 (quoting *Luce*, 469 U.S. at 41, 105 S. Ct. at 163)).

The Federal Rules of Evidence provide that only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401 (a)–(b). Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir.1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir.2008).

## II. Application

### A. Defendants' Motion

Defendants seek to preclude Plaintiffs from offering any evidence, including documents or testimony, about a prior wage and hour lawsuit in California involving Juan Cisneros that took place in or about 2010. (*See* Def. Mem. at 1). Specifically, Defendants claim that this lawsuit is irrelevant to the instant case because it involved Juan Cisneros, who is the *father* of Hacienda's alleged owner—not Jesus Cisneros, who bought Hacienda in June 2016. (*Id.* at 2.) Defendants

3

further argue that the previous lawsuit was more than seven years before the events at issue, involved a different restaurant, took place in a different state with different state wage and hour laws, and involved different parties, including different owners and plaintiffs. (*Id.* at 3.)

Defendants also point out that under the NYLL and FLSA, employees are entitled to liquidated damages "unless the employer proves a good-faith basis to believe that its underpayment of wages was in compliance with the law." NYLL § 198 (1-a). Therefore, they argue, since ignorance of overtime obligations is not a defense under either set of laws, Plaintiffs need not make any showing of willfulness; rather, Defendants must show that they had a good-faith basis to believe they complied with their overtime obligations. (*Id.* at 5.) Consequently, Defendants argue that any evidence regarding the prior lawsuit is irrelevant, and if relevant, its probative value is far outweighed by the danger of unfair prejudice. (*Id.* at 4.)

Plaintiffs argue that whether Juan or Jesus is the owner of Hacienda is a disputed fact to be resolved at trial, and thus, the fact that Juan was involved in a prior wage and hour lawsuit is directly relevant as to whether Defendants acted in good faith in trying to meet with their wage and hour obligations. (*See* Plaintiffs' Opposition to Defendants' Memorandum, ("Pl. Opp."), ECF No. 37.) Plaintiffs add that the evidence is particularly relevant because Defendants already put good faith into issue through their affirmative defenses. (Pl. Opp. at 3.).

### B. Admissibility of Limited Testimony Related to Other Lawsuit

The Court finds that Defendants' argument prevails.

First, Plaintiffs have not established through any *evidence* that Juan Cisneros was an owner of Hacienda, and in fact, both Juan and Jesus have testified to the contrary:

Q: Did your father ever supervise employees at the restaurant?

A: No.

4

Q: What were his duties?

A: Waiter

(Deposition of Jesus Cisneros, ("Jesus Dep."), ECF No. 35-1 at 62: 7-11); (Deposition of Juan Cisneros, ("Juan Dep."), ECF No. 38-3 at 113:12-20):

Q: Who is the owner?

A: Jesus Cisernos

Q: Okay. Does anyone have an ownership interest in the restaurant in addition to Jesus?

A: No.

Q: How do you know?

A: Because if he had it, I would know it. I believe he would have told me.

Second, Defendants are correct that none of the case law that Plaintiffs cited involved different owners, different plaintiffs, different restaurants and different state wage and hour laws. *See e.g., Ordonez v. A & S Broadway Produce, Inc.*, No. 14-CV-4152 NSR JCM, 2015 WL 5729415, at *1 (S.D.N.Y. Sept. 29, 2015) (involving prior complaints filed against same defendants, same restaurant, in same state with same employees under same laws); *Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988) (also involving same business and prior violations of same statute); *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 276 (S.D.N.Y. 2015) (allowing in knowledge about other cases in order to establish that *the relevant decision makers* had notice that could prove his willfulness.)

Moreover, there is a significant time gap between the prior litigation and the issues in the instant litigation, and also a seemingly low level of involvement of Juan, whom Plaintiffs have not demonstrated to be an owner of Hacienda or a person with decision-making power over

employees' wages, conditions, and terms of employment. Accordingly, the probative value of this evidence is far exceeded by its prejudicial value and likelihood of confusing the jury.

Defendants' motion *in limine* is therefore GRANTED.

### C. Plaintiffs' Motion

Plaintiffs ask the Court to instruct the jury that an adverse inference may be drawn as to the contents of documents—time sheets allegedly kept by Defendants showing the dates and hours worked by Plaintiffs—that were not produced in this case. (Pl. Mem. at 1.) Specifically, Plaintiffs' claim that as part of discovery of this case, they requested time records and time cards reflecting the days and hours that they worked, but Defendants failed to turn over those time records, and only turned over a few records covering a time period *after* Plaintiffs had left their jobs. (*Id.* at 2.) Plaintiffs further add that while Defendants produced a police report regarding this alleged theft, Jesus Cisneros testified that there was no sign that the restaurant door had been broken during the theft and the police told him that they believed the theft was an "inside job." (*Id.*) Finally, Plaintiffs add that as there was no digital copy of these documents, and because Defendants had clear notice about this lawsuit and the significance of these documents before they went missing, Defendants violated their duty to preserve relevant evidence with a "culpable state of mind." (*Id.* at 3-4.)

Defendants argue first that, as a procedural matter, Plaintiffs' motion is not really a proper motion *in limine* but rather a legal argument related to proposed jury instructions. (*See* Defendants' Opposition to Plaintiffs' Motion, ("Def. Opp."), ECF No. 31.) Alternatively, Defendants argue that Plaintiffs' motion should be denied because an adverse inference instruction is an extreme sanction that should not be given lightly, and here, the three elements for establishing an adverse inference have not been satisfied. (*Id.* at 3.)

Defendants emphasize that the documents at issue were not destroyed, but were stolen, along with liquor and cash. (*Id.*) They add that even if they had an obligation to preserve these documents, at most, Hacienda acted negligently in not maintaining electronic copies. (*Id.*) They also add that this situation is far from the situation in *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003), a case upon which Plaintiffs rely, as the documents here were not likely to support Plaintiffs' claims nor had Defendants ever received an instruction to preserve the documents, which they subsequently breached. (*Id.* at 4-5.) Finally, Defendants add that an adverse instruction is inappropriate because Defendants took reasonable measures to guard against the theft by keeping the documents "in a locked room in a locked restaurant." (*Id.* at 5.)

### D. Court's Decision on Adverse Inference

The Court begins by noting that as a procedural matter, it is appropriate to ascertain the adverse inference instruction in a motion *in limine*. *See Rhoda v. Rhoda*, No. 14 CIV. 6740, 2017 WL 4712419, at *4 (S.D.N.Y. Oct. 3, 2017). Further, the adverse jury instruction is governed by the standard set out in *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003), which holds that an adverse jury instruction is appropriate upon a showing: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." In *Zubulake*, the Court also explained that "[i]n this circuit, a 'culpable state of mind' for purposes of a spoliation inference *includes ordinary negligence.*" *Id.* (emphasis added). Thus, it explained, "when evidence is destroyed in bad faith (*i.e.*, intentionally or willfully), that fact alone is sufficient to demonstrate relevance, [but] when the destruction is

7

negligent, relevance must be proven by the party seeking the sanctions." *Id.*; *De Espana v. Am. Bureau of Shipping*, No. 03 CIV.3573, 2007 WL 1686327, at *6 (S.D.N.Y. June 6, 2007).

Here, there is no evidence that the payroll records were destroyed intentionally or willfully. Rather, Defendants submitted evidence, by way of an official police report, reflecting that Hacienda was burglarized and that payroll records, time sheets, $1,000.00, a bottle of alcohol, and two pairs of Nike sneakers were all legitimately stolen. (*See* Declaration of Adam C. Weiss, ("Weiss Decl."), Ex. A, ECF No. 31.) Defendants also submitted the deposition testimony of Jesus Cisneros, who corroborated that he believed Hacienda was burglarized, and further, that he believed Erlin and Erika may have been the perpetrators. (*See* Jesus Dep. at 78: 7-21):

Q: Do you have those documents from the whole time that you've been the owner of the restaurant?

A: No. They were stolen at the office.

Q: Who stole them?

A: I don't know. I believe it was them, or they sent somebody there. 'Cause who else would have interest in them.

Q: You believe it was Erlin and Erika who stole them?

A: Yes.

Q: Why do you believe that?

A: Because who else would have interest in time sheets.

Plaintiffs have offered no evidence to counter Defendants' theory that the payroll records were all legitimately stolen. Further, because it is undisputed that Defendants kept the records in a locked room in a locked restaurant, the Court agrees that, at best, Defendants were negligent in not maintaining digital copies of them.

More importantly, Plaintiffs have offered no evidence suggesting that the missing evidence would have been favorable to them, which the Court finds is necessary for them to garner the adverse jury instruction. *See Zubulake*, 220 F.R.D. at 221 ("because UBS's spoliation was negligent... Zubulake must demonstrate that a reasonable trier of fact could find that the missing e-mails would support her claims."). In *Zubulake*, the Court explained that the "corroboration requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him." *Id.*

The Second Circuit has also explained:

> to obtain an adverse inference instruction, a party must establish that the unavailable evidence is 'relevant' to its claims or defenses, ...our cases make clear that 'relevant' in this context means something *more than sufficiently probative* to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been *of the nature alleged* by the party affected by its destruction.

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (internal citations and quotation marks omitted) (emphasis added).

Here, Plaintiffs have not provided any evidence to show that the payroll records would be "more than sufficiently probative" or "of the nature alleged" with regards to their overtime claims. In other words, Plaintiffs needed to provide testimonial or some other evidence to show that the payroll records would *support*, not merely be relevant to, their allegations. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108 (2d Cir. 2001) (holding that missing documents were likely "relevant" for purposes of an adverse inference in light of how the party seeking the adverse inference established their relevance through deposition testimony regarding the nature of the

missing documents), *declined to follow on other grounds by Moy v. Perez*, 712 F. App'x 38 (2d Cir. 2017).

But while Defendants are correct that an "adverse inference instruction is an extreme sanction and should not be given lightly," *Zubulake,* 220 F.R.D. at 220, the Court also recognizes that the purpose of an adverse instruction is *remedial*, not punitive. *See Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 75 (S.D.N.Y.1991) ("The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss."). And although Plaintiffs have not yet made the predicate factual findings to warrant an adverse instruction, the Court does not find that the evidentiary balance has been restored to a just place to cure the potential prejudice to either party.

Accordingly, based on its substantial flexibility in fashioning the language it may employ to the jury, the Court will offer the following jury instruction:

> In this case, evidence has been received which Plaintiffs contend show that payroll records exist or existed for the time period during which Plaintiffs worked, though no such records have been produced. If you find that the Plaintiffs have proven by a preponderance of the evidence: (1) that these payroll records exists; (2) that they were in the Defendants' possession; and (3) that the non-production of these records has not been satisfactorily explained, then you may infer, though you are not required to do so, that if the records had been produced in Court, they would have been favorable to the Plaintiffs. You may give any such inference, whatever force or effect as you think is appropriate under all the facts and circumstances.

*See Mali v. Fed. Ins. Co.,* 720 F.3d 387, 391 (2d Cir. 2013) (permitting similar adverse jury instruction language and explaining that it was a permissive instruction, part of the court's explanation of circumstantial evidence rather than a sanction). Hence, Plaintiff's motion is GRANTED in part and DENIED in part.

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED and Plaintiff's motion is GRANTED in part and DENIED in part. The Clerk of the Court is respectfully requested to terminate the motions at ECF No. 29 and 33.

Dated: December 6, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge